UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| PAIGE CARTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:22-cv-01089-SLD-JEH |
| ) | |
| ILLINOIS STATE POLICE ) | |
| DEPARTMENT; DARREN GREEN, JR. in ) | |
| his individual and official capacity; and ) | |
| JACOB DURO in his individual and official ) | |
| capacity, ) | |
| ) | |
| Defendants. ) | |

ORDER

Before the Court is Defendants Illinois State Police Department ("ISP"), Darren Green, Jr., and Jacob Duro's motion to dismiss, ECF No. 10. For the following reasons, the motion is GRANTED IN PART and DENIED IN PART.

**BACKGROUND**[1]

On March 25, 2021, Plaintiff Paige Carter was riding in a vehicle driven by her significant other, Randy Lindsey. At that time, the ISP was engaged in an investigation into criminal activity by Lindsey; Plaintiff was not aware of any such criminal activity or of the investigation. The ISP initiated a traffic stop of the vehicle pursuant to the investigation, and Lindsey was arrested for driving on a suspended license and for unlawful possession of a controlled substance with intent to distribute. Plaintiff was temporarily detained, put in handcuffs, and questioned regarding Lindsey's drug-related activity, but she was not charged

---

[1] At the motion to dismiss stage, the court "accept[s] as true all well-pleaded facts in the complaint, and draw[s] all reasonable inferences in [the plaintiff's] favor." *Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016). Thus, the factual background is drawn from the complaint, ECF No. 1.

1

with a crime. During her interrogation, Carter interacted with several ISP officers, including Duro and an Officer Zook.

The following day, Duro contacted Plaintiff via a text message to her personal cell phone. He offered to assist her in retrieving the vehicle that Lindsey had been driving when he was arrested, which had been impounded. They met at the location of the impound, but Duro was unable to retrieve the vehicle. He "instructed [Plaintiff's] previous ride to leave," gave her a ride home, and "began making advances upon [her] . . . that were flirtatious and sexual in nature." Compl. 6, ECF No. 1. He stated that he needed to enter her apartment to see how his employees had raided it and to help her clean it. While in the apartment, Duro "again made advances and comments of a sexual nature" to Plaintiff and "made unauthorized and unwanted contact with Plaintiff . . . by hugging and grabbing her body parts." *Id*. He also told Plaintiff that he wanted to see her again and that he lived close by. Duro was in his ISP uniform throughout the time he and Plaintiff were together that day.

From March 26, 2021 onward, Duro sent a series of unwanted text messages to Plaintiff. He texted the following messages to her, among others:

- "[T]his was her opportunity to move on." *Id*.
- "Good morning, by the way this is my personal cell." *Id*.
- "Hello Hot stuff." *Id*.
- "LOL! I thought you liked the other guy more." *Id*. at 7.[2]
- "[M]aybe your beauty softened me up over time." *Id*.
- "[Y]ou are a gorgeous woman, just sayin [sic]." *Id*.
- "[W]hat you got going on today." *Id*.

---

[2] This was a reference to Officer Zook.

- "Randy isn't a high level dealer whose incarceration is going to bring violence, He is very low level [sic]. I can honestly say you are overthinking this. I'm saying that, not to be rude towards Randy, but to take anxiety away from you." *Id*.

- "It will all be fine." *Id*.

- "[D]o you have plans after work?" *Id*.

- "Let me know if you want to hang out or need help with the car." *Id*.

Duro also had conversations with Plaintiff about how he could help or hurt Lindsey's case and any further investigation into Plaintiff's involvement with Lindsey's actions. Duro subsequently contacted Plaintiff and instructed her to delete all previous text conversations between them.

Due to Duro's unwanted advances, Carter began to fear for her safety and suffered severe emotional distress. She worried that she would lose her license as a health care provider and would no longer be able to provide for her children, which caused her mental anguish.

On March 23, 2022, Plaintiff initiated this suit against the ISP, Green in his individual capacity and official capacity as director of the ISP, and Duro in his individual capacity and official capacity as an employee of the ISP. *Id*. at 1. She brings a 42 U.S.C. § 1983 claim against Duro under the Fourteenth Amendment for sexual harassment (Count I), a § 1983 claim against the ISP under the Fourteenth Amendment based on Duro's sexual harassment of Plaintiff (Count II), a state law claim for international infliction of emotional distress ("IIED") against all Defendants (Count III), a state law claim for negligent or willful and wanton conduct against all Defendants (Count IV), a *respondeat superior* claim against the ISP and Green (Count V), and a state law claim for indemnification (Count VI). *Id*. at 8–12. The instant motion followed.

3

**DISCUSSION**

Defendants move to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). They argue that Counts II, III, IV, V, and VI must be dismissed against the ISP and Green as its director[3] under the doctrine of sovereign immunity, Mot. Dismiss 3–6; that Count I should be dismissed against Duro because he was not acting under the color of state law, *id*. at 6–8; that Count III should be dismissed against Duro because Plaintiff has failed to plead extreme and outrageous conduct, *id*. at 8–9; and that Count IV should be dismissed against Duro because Plaintiff has failed to allege the duty element of the negligence claim, *id*. at 10–11. Plaintiff agrees that the case should be dismissed against the ISP and Green and accordingly asks the Court to grant the motion to dismiss as to the claims against them and permit her leave to amend her complaint to reflect their dismissal from the suit. *See* Resp. Mot. Dismiss 2–3, ECF No. 12. The Court grants Plaintiff leave to amend the complaint. *See* Fed. R. Civ. P. 15(a)(2) (providing that a party may amend her pleading with the court's leave and that "[t]he court should freely give leave when justice so requires"). The Clerk is directed to terminate the ISP and Green as parties. Plaintiff contends that she has plausibly stated claims against Duro in Counts I, III, and IV, Resp. Mot. Dismiss 2, so the Court will address Defendants' motion to dismiss those claims in greater detail.

**I.   Legal Standard**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). At the motion to dismiss stage, the key inquiry is whether the complaint is "sufficient to provide the defendant with 'fair notice' of the plaintiff's claim and its basis." *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 934

---

[3] Defendants dispute that Green was the ISP director during the time period indicated in the complaint but "respond to the [c]omplaint on behalf of . . . Green as if he was the Director for efficiency purposes." Mot. Dismiss 2 n.2.

4

(7th Cir. 2012) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). While "detailed factual allegations are unnecessary, the complaint must have 'enough facts to state a claim to relief that is plausible on its face.'" *Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When deciding on a motion to dismiss, "[t]he complaint's well-pleaded factual allegations, though not its legal conclusions, are assumed to be true," *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019 (7th Cir. 2013), and the court must also "draw all inferences in the light most favorable to the nonmoving party," *Vesely v. Armslist LLC*, 762 F.3d 661, 664 (7th Cir. 2014). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

II. Analysis

   a. Count I

In Count I, Plaintiff alleges that Duro violated her rights under the Fourteenth Amendment by sexually harassing her. Compl. 8–9. She brings this claim pursuant to § 1983. *Id.* at 8. To state a claim for relief under § 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Defendants argue that Count I should be dismissed because Plaintiff has failed to plead that Duro was acting under color of state law, as the alleged harassment was not related to Duro's performance of police duties. Mot. Dismiss 6–8.[4]

---

[4] Defendants do not contend that Plaintiff has failed to allege the violation of a constitutional right. *See* Mot. Dismiss 6–8.

"The 'under color of state law' requirement is met if the defendant acted in an official capacity as a public employee or exercised responsibilities pursuant to state law." *Chavez v. Guerrero*, 465 F. Supp. 2d 864, 868–69 (N.D. Ill. 2006) (citing *West*, 487 U.S. at 50). Employment as a state police officer does not automatically render an individual's acts under color of state law; rather, the central question is whether his "actions related in some way to the performance of a police duty." *Gibson v. City of Chicago*, 910 F.2d 1510, 1516–17 (7th Cir. 1990). While a police officer's conduct "in the ambit of [his] personal pursuits" does not fall under § 1983, the "[a]cts of [an] officer[] who undertake[s] to perform [his] official duties are included [under § 1983] whether [he] hew[s] to the line or overstep[s] it." *Id.* at 1519 (emphasis omitted) (quoting *Screws v. United States*, 325 U.S. 91, 111 (1945)). "In determining whether a police officer is acting under color of law or is instead engaged in a private pursuit, '[i]t is the nature of the act performed, not the clothing of the actor or even the status of being on duty, or off duty, which determines whether the officer has acted under color of law.'" *Chavez*, 465 F. Supp. 2d at 869 (alteration in original) (quoting *Gibson*, 910 F.2d at 1517).

Defendants rely on *Chavez* to support their argument that Duro's sexual pursuit of Plaintiff was private in nature. *See* Mot. Dismiss 7–8. In that case, the court found that the plaintiff had failed to plausibly allege that a police officer who had obtained the plaintiff's phone number from a police report she had filed and subsequently called to express romantic interest in her and followed her in his car was acting under color of state law. *See Chavez*, 465 F. Supp. 2d at 870–71. The court reasoned the officer was "not alleged to have taken any actions that would be associated with the performance of police duties, such as using physical force against [her], handcuffing her, or arresting her," nor was he alleged to have indicated to her that he was

6

performing official police duties, "thus act[ing] no differently than a private citizen might have acted—however inappropriately—to get someone's attention." *Id.*

The allegations in *Chavez* are distinguishable from those contained in Plaintiff's complaint. First, the meeting between Plaintiff and Duro on March 26, 2021, during which Plaintiff alleges Duro sexually harassed her, was directly related to the previous day's traffic stop and subsequent police investigation. Duro offered to assist Plaintiff in retrieving her car from the location where it had been impounded by the police. Compl. 5.[5] When he was unable to get the car out of impound, he instructed Plaintiff's ride to leave and drove her home, at which time he "began making advances upon Plaintiff . . . that were flirtatious and sexual in nature." *Id*. at 6. When they reached her apartment, Duro told Plaintiff that "he needed to come into her home to see how his employees raided the apartment and wanted to help clean it." *Id*. In the apartment, Duro "again made advances and comments of a sexual nature" to Plaintiff and "made unauthorized and unwanted contact with Plaintiff . . . by hugging and grabbing her body parts." *Id*. Retrieving Plaintiff's car from impound and entering her apartment to see how his employees had raided it were associated with the performance of Duro's police duties, and Duro sexually harassed Plaintiff while engaging in these activities. The Court can thus infer from the complaint that Plaintiff met with Duro because he was a police officer offering to help her in that capacity, unlike the defendant in *Chavez*, who did not "indicate that he was calling [the plaintiff] on police business" or "invok[e] his authority as a police officer." *See Chavez*, 465 F. Supp. 2d at 870.

Second, some of the harassing texts Duro is alleged to have sent Plaintiff concern Lindsey's ongoing criminal case and her involvement with it and thus are directly related to Duro's official duties as a police officer. Duro was involved in the interrogation Plaintiff

---

[5] It is irrelevant whether Duro was off duty during this meeting or any subsequent interactions with Plaintiff. *See Gibson*, 910 F.2d at 1517.

7

underwent as to her knowledge of Lindsey's criminal activity when she was temporarily detained after the traffic stop. Compl. 5. Plaintiff alleges that Duro subsequently sent her unwanted text messages about Lindsey's case, including messages stating that "[Lindsey] [wa]sn't a high level dealer whose incarceration is going to bring violence" and that "[h]e [wa]s very low level," that "[i]t w[ould] all be fine," and that she should let him know if she "need[ed] help with the car." *Id*. at 7. Plaintiff also claims that Duro had further conversations with Plaintiff "as to how he could help and hurt the case for . . . Lindsey and/or any investigation in to her involvement." *Id*. It is plausible to infer that these messages regarding Lindsey's case and Plaintiff's potential involvement were related to Duro's duties as a police officer, even if every text exchange they had did not directly concern them. In contrast, the defendant in *Chavez* discussed non-police-related subjects with the plaintiff such as the "connection" he believed they had and a potential trip to Italy, leading the court to conclude that the officer's actions were "a purely private pursuit fueled by his romantic interest in" the plaintiff. *Chavez*, 465 F. Supp. 2d at 870–71 (quotation marks omitted).[6]

Because Plaintiff has plausibly alleged that Duro's harassing actions "related in some way to the performance of a police duty," *Gibson*, 910 F.2d at 1517, she has adequately pleaded that Duro acted under color of state law. The motion to dismiss as to Count I is therefore denied.

---

[6] The *Chavez* court noted that even assuming that the defendant officer, during his conversation with the plaintiff, "made reference to his job as a police officer by hinting that he could help her with [a] traffic accident," this would not be sufficient to plead that he was acting under color of state law. *See Chavez*, 465 F. Supp. 2d at 870. The allegations here contain far more to connect Duro's behavior to his police duties—he not only referenced his job as a police officer but asked to meet with Plaintiff for police-related reasons and, further, made comments related to his ability as an officer to interfere with the case against Plaintiff's significant other and any investigation into Plaintiff's involvement. *See* Compl. 5–7.

### b. Count III

In Count III, Plaintiff brings an IIED claim against Defendants.[7] *See* Compl. 10–11. She claims that Duro's sexual harassment and intimidation of her constituted extreme and outrageous conduct and that she suffered severe emotional distress as a result. *Id.* In Illinois,[8] to state a claim for IIED, a plaintiff must plead "(1) extreme and outrageous conduct, (2) intent by the defendant to cause or a reckless disregard of the probability of causing emotional distress, (3) severe or extreme emotional distress suffered by the plaintiff, and (4) an actual and proximate causation of emotional distress by the defendant's outrageous conduct." *Hayes v. Ill. Power Co.*, 587 N.E.2d 559, 563 (Ill. App. Ct. 1992). Defendants contend that the complaint fails to adequately plead extreme and outrageous conduct by Duro and asserts that the IIED claim must therefore be dismissed. Mot. Dismiss 9.[9]

"Whether conduct is extreme and outrageous is evaluated on an objective standard based on all of the facts and circumstances." *Thomas v. Fuerst*, 803 N.E.2d 619, 625 (Ill. App. Ct. 2004). At the motion to dismiss stage, federal district courts examine whether a plaintiff has plausibly pleaded facts that satisfy that objective standard. *See, e.g.*, *Thomas v. Coach Outlet Store*, 16 C 3950, 2017 WL 386656, at *4–5 (N.D. Ill. Jan. 27, 2017). IIED liability "does not extend to mere insults, indignities, threats, annoyances, petty oppressions or trivialities," nor is acting with tortious or criminal intent or malice sufficient. *Pub. Fin. Corp. v. Davis*, 360 N.E.2d 765, 767 (Ill. 1976). Rather, liability attaches "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Id.*

---

[7] Because the ISP and Green have been dismissed from the suit, *see supra* Discussion, the Court addresses the allegations only as they apply to Duro.
[8] Neither party disputes that Illinois law applies to the IIED claim. *See* Mot. Dismiss 8–9 (citing exclusively to Illinois law); Mem. Supp. Resp. Mot. Dismiss 9, ECF No. 13 (same).
[9] Defendants make no argument as to the other IIED elements. *See* Mot. Dismiss 8–9.

(quotation marks omitted). Conduct is outrageous when "a reasonable person would hear the facts and be compelled to feelings of resentment and outrage." *Duffy v. Orlan Brook Condo. Owners' Ass'n*, 981 N.E.2d 1069, 1079 (Ill. App. Ct. 2012).

"In determining whether behavior is extreme and outrageous, courts may consider whether the defendant abused a position of actual or apparent authority over the plaintiff or abused the power to affect the plaintiff's interests"; they may also take into account any knowledge on the defendant's part "that the plaintiff was particularly susceptible to emotional distress due to some physical or mental condition or peculiarity." *Id*. "The more control . . . a defendant has over the plaintiff, the more likely that [the] defendant's conduct will be deemed outrageous, particularly when the alleged conduct involves either a veiled or explicit threat to exercise such authority or power to [the] plaintiff's detriment." *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988). When abuse of authority is at issue, "courts also examine whether the defendant reasonably believed that his objective was legitimate." *Duffy*, 981 N.E.2d at 1080 (quotation marks omitted). Police officers are among the types of individuals "who, while exercising their authority, can become liable for IIED where there are extreme abuses of their positions." *Id*.

The Court finds that Plaintiff has plausibly pleaded that Duro's conduct was extreme and outrageous. Defendants focus on a subset of the text messages Duro is alleged to have sent Plaintiff to argue that his behavior "d[id] not clear the high hurdle of extreme and outrageous conduct," Mot. Dismiss 9, but they fail to discuss other allegations regarding Duro's abuse of his position as a police officer to sexually harass and threaten Plaintiff. Plaintiff claims that Duro told her that he would give her a ride home after he failed to retrieve her vehicle from impound, then, when they reached her apartment, "informed" her that "he needed to come into her home to

10

see how his employees raided the apartment and wanted to help clean it." *See* Compl. 5–6. Then, having gained entry to Plaintiff's apartment for an ostensibly police-related purpose, and while in his police uniform, he "made advances and comments of a sexual nature" to Plaintiff and "made unauthorized and unwanted contact with Plaintiff . . . by hugging and grabbing her body parts." *Id*. at 6. The Court finds that a reasonable person, upon hearing how Duro used his authority as a police officer to invite himself into Plaintiff's apartment under the guise of helping her and then proceeded to sexually harass her and touch her body without her consent, would "be compelled to feelings of resentment and outrage." *See Duffy*, 981 N.E.2d at 1079.

Moreover, in addition to sending a series of unwanted flirtatious text messages to Plaintiff, Duro told Plaintiff about "how he could help and hurt the case for . . . Lindsey and/or any investigation in to her involvement." Compl. 6–7. As a member of a task force responsible for making arrests and conducting investigations into suspects involved with criminal and drug activity and, furthermore, as an officer who participated in the interrogation of Plaintiff regarding Lindsey's criminal activity, Duro had some authority over Plaintiff and Lindsey in this regard. *See id*. at 4–5. His alleged words to Plaintiff that he had the ability to help or hurt Plaintiff and Lindsey not only served as a reminder to Plaintiff of the power he held over her future with regard to the criminal investigation but also could plausibly be interpreted as a "veiled . . . threat" that he could choose to exercise that power, potentially resulting in a worse outcome for Plaintiff and Lindsey. *See McGrath*, 533 N.E.2d at 809. And no legitimate objective for such a statement is apparent from these allegations. *See Duffy*, 981 N.E.2d at 1080. The Court considers this alleged behavior to go beyond the bounds of decency. *See Davis*, 360 N.E.2d at 767.

Thus, these allegations are sufficient, at this stage, to plead extreme and outrageous conduct by Duro. As such, Defendants' motion to dismiss Count III is denied.

### c. Count IV

In Count IV, Plaintiff makes a claim against Defendants[10] for negligent or willful and wanton conduct. Compl. 11. Although Plaintiff pleads negligence and willful and wanton conduct as alternatives, *see id.*, in Illinois,[11] "[t]here is no separate, independent tort of willful and wanton conduct," *Jane Doe-3 v. McLean Cnty. Unit Dist. No. 5 Bd. of Dirs.*, 973 N.E.2d 880, 887 (Ill. 2012). "Rather, willful and wanton conduct is regarded as an aggravated form of negligence," and a plaintiff must first "plead . . . the basic elements of a negligence claim—that the defendant owed a duty to the plaintiff, that the defendant breached that duty, and that the breach was a proximate cause of the plaintiff's injury." *Id.* Defendants argue that Plaintiff has failed to plead the existence of a relevant duty because, during the interactions between Plaintiff and Duro after the interrogation on March 25, 2021, Duro was not acting as a member of the ISP and so his status as a police officer "c[ould not] form any continued duty to Plaintiff." Mot. Dismiss 10–11 (emphasis omitted).[12]

"Whether a duty exists is a question of law for the court to decide." *Jane Doe-3*, 973 N.E.2d at 887. "The touchstone of [a] court's duty analysis is to ask whether a plaintiff and a defendant stood in such a relationship to one another that the law imposed upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff." *Marshall v. Burger King Corp.*, 856 N.E.2d 1048, 1057 (Ill. 2006). In examining this relationship, courts look to "(1) the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the

---

[10] Because the ISP and Green have been dismissed from the suit, *see supra* Discussion, the Court addresses the allegations only as they apply to Duro.

[11] Neither party disputes that Illinois law applies to the negligent or willful and wanton conduct claim. *See* Mot. Dismiss 10–11 (citing exclusively to Illinois law); Mem. Supp. Resp. Mot. Dismiss 10 (not objecting to Defendants' application of Illinois law).

[12] Defendants make no argument as to the other elements of this claim. *See* Mot. Dismiss 10–11.

burden of guarding against the injury, and (4) the consequences of placing the burden on the defendant." *Jane Doe-3*, 973 N.E.2d at 888.

It is not clear from the text of the complaint what duty Plaintiff believes Duro breached. Count IV states that "Defendants breached the duty of care owed to Plaintiff . . . . by failing to intervene and/or to prevent sexual harassment, intimidation and emotional distress." Compl. 11. Throughout the rest of the complaint, Plaintiff identifies Duro as the individual who engaged in sexual harassment and intimidation, *see, e.g.*, *id.* at 2, 8, meaning that if Plaintiff intended to attach the duty of care identified above to Duro, she would essentially be alleging that Duro failed to intervene to prevent his own sexual harassment and intimidation of Plaintiff. Plaintiff's use of the plural "Defendants" makes it difficult to ascertain whether she intends to claim that only the ISP and Green breached this duty or whether she also wishes to claim that Duro confusingly held this duty vis-à-vis himself. *See Eilenfeldt v. United C.U.S.D. #304 Bd. of Educ.*, Case No. 4:12-cv-04029-SLD-JAG, 2013 WL 12248080, at *3 (C.D. Ill. Mar. 25, 2013) (finding that the plaintiff violated Federal Rule of Civil Procedure 8(a)'s fair notice requirement by "lumping '[d]efendants' together," thus depriving them of "the ability to determine which of [her] allegations [we]re being made against them and which we[re] not").

Plaintiff argues that Count IV actually alleges that Duro breach a duty of care to Plaintiff by "failing to properly conduct [the] police investigation." *See* Mem. Supp. Resp. Mot. Dismiss 10, ECF No. 13. She points to the same "failing to intervene and/or to prevent" language discussed above, *id.*; *see* Compl. 11, and so her characterization does not reflect the complaint's text. Nor does the Court find that Plaintiff has otherwise articulated a specific duty Duro had to her which he breached.

13

The complaint thus fails to adequately put Duro on notice as to the duty to Plaintiff he is alleged to have breached. *See Huri v. Off. of the Chief Judge of the Cir. Ct. of Cook Cnty.*, 804 F.3d 826, 832 (7th Cir. 2015) ("[T]he complaint must give the defendant fair notice of what the claim is and the grounds upon which it rests."). Because Plaintiff has therefore failed to plead an essential element of her negligence claim, the Court grants Defendants' motion to dismiss Count IV. The Court will, however, give Plaintiff a chance to replead her negligent or willful and wanton conduct claim. *See* Mem. Supp. Resp. Mot. Dismiss 10 (requesting leave to replead this claim in the event the Court dismisses it); *see* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to file an amended complaint] when justice so requires.); *Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010) ("[W]hile a court may deny a motion for leave to file an amended complaint, such denials are disfavored.").

## CONCLUSION

For the foregoing reasons, Defendants Illinois State Police Department ("ISP"), Darren Green, Jr., and Jacob Duro's motion to dismiss, ECF No. 10, is GRANTED IN PART and DENIED IN PART. Plaintiff Paige Carter may file an amended complaint within twenty-one days of entry of this Order. All claims are dismissed against the ISP and Green; the Clerk is directed to terminate them as parties on the docket.

Entered this 25th day of July, 2023.

                                                      s/ Sara Darrow
                                                      SARA DARROW
                                                      CHIEF UNITED STATES DISTRICT JUDGE